Council, my name is Damon Young and I represent the petition in this case, Steve Sutton. In this case the standard of view is manifest weight, but we're here to argue that the commission decision should be reversed because there was not enough evidence to support the commission's decision. Just briefly for the facts, the petitioner was injured on February 15, 2011, while he was trying to pick up a planetary gear. He suffered an inguinal hernia and eventually had surgery on August 2011. But you're only challenging the denial of folk rehab, right? That's right, Your Honor. And after he was released on August 13, 2012 with 30 pound permanent restrictions and their IME he agreed with those restrictions and also stated that he could not return to his work with the respondent or any type of work along those lines. On March 8, 2013, vocational rehabilitation was started and paid for by the respondent and the respondent also had their voc counselor start the voc process. His name was Daniel Minich. So the commission found the claimant was not entitled to voc rehab after May 16, 2013, correct? That is correct. Okay. And wasn't there evidence that your client was not cooperating? Right. I don't believe so, but this is why. They claimed multiple reasons why they found that he was not motivated in his vocational counseling and that's why the arbitrator found that they should not reinstate him. First was that the arbitrator felt that he should shave his beard and get new clothes. My client refused to shave his beard, which I don't think that should be any issue or anything. You know what? I would kind of agree with you. Let's not get hung up on the beard issue. Right. Okay. One thing I'd like you to address, the claimant testified that he never missed the voc rehab appointment with Minich. However, according to Minich, he failed to show up for three of their eight scheduled appointments. So isn't there a conflict there? Well, that's not completely accurate. What happened was that when he went to these appointments, he only missed one and he claims he did not get the letter from Mr. Minich for that appointment. What he was counting was that they were supposed to meet at the library, but the petitioner stated that he wanted to meet with his attorney at that meeting and that was one of the ones that he counted. So that was rescheduled. If we could go through a timeline on that, March 8th, 2013 was the initial visit. He went and they were able to do an initial assessment. The next point was the 19th. He showed for that appointment and they also went over how to develop a resume and go over job leads. On March 1st, it was what happened. They were supposed to meet at the library. This is one of the counted misses, but actually they rescheduled and met at the attorney's office within a day or two after that. The fourth appointment was the 17th. He did show for that, but there was an issue with going to Kohl's to get new clothes and they had a confusion on which Kohl's to go to or what the address was for Kohl's. My client had never went. It's important to note that the counselor missed one of the appointments as well and that the only no-show was 5-3-13, which is the only miss that he had. And the petitioner testified that he didn't get the letter for that appointment. This is what I think is important and why I appeal this is that there was confusion. And this is the point, is that my client had a doctor's appointment or went and seen his doctor and said he was having pain. He then reports to the voc counselor, I'm having pain, I don't think I can look for a job. Mr. Minich in his deposition then calls Dr. Whipple, the treating doctor, and verifies this. Mr. Minich then calls the respondent and says, you know, I can't do counseling anymore because his doctor has him off. And so what happens, immediately maintenance payments were stopped. Voc counseling was stopped without any investigation into what had happened. My client had absolutely no money and couldn't do anything, but once he financially was able to do that, he then started a job search in November of 2013. The commission on that subject pointed to the fact that the claimant had a six-month delay in resuming his directed job search. So what do you have to say about that? That's a good point. But here's the reason why he could not do that, is that he was making $9.33 an hour when he was fired from his job. He went through these meetings that we discussed, and then once they stopped paying him, he had no way to get to anywhere. He had no gas money, no ability to do that. The only time that he was able to finally start his job search was when it was financially viable for him, and that was when he was awarded Social Security Disability in November, and that's how he was able to start his job search. Let me ask you a pointed question, and you have some ostensible explanations for some of these issues, but obviously the commission explicitly found Minitch to be credible. They had some credibility problems with your claimant. So what are we supposed to do with that? Good point. And here's, I find, and I hope you do find Mr. Minitch credible, because in cross-examination, he did explain one important point, and that was he was found uncooperative on direct examination, and then I asked him on cross-examination in the deposition, number one, was he uncooperative? And Mr. Minitch said, no, he wasn't uncooperative. The issue was, is this medical problem caused a situation where he could not proceed with both. So then, because he couldn't proceed, he could not go any further. So his definition, uncooperative, I don't think is the correct way to explain it on cross-examination. Number two, he felt that Mr. Sutton, my client, was being cooperative in VOC. I think that's very important. While he was in VOC, there's the argument back and forth, should he shave his beard? Did he miss appointments? Well, that's one thing. But the most important thing is, when you ask Mr. Minitch, was he cooperative? And he said, yes, he was cooperative. That's right in cross-examination. And he also felt that if we could continue with VOC, he could find a job. I think that's very important, too. And that was on cross-examination, and he testified to that in his deposition, and that's in the record as well. And so I think, Mr. Minitch, I think because of the confusion with the calls to the doctor, there was a problem there. And in his deposition, he was able to explain what had happened and why, in my opinion, from his testimony, VOC should have been continued. So Minitch's testimony was favorable to your claimant, and so why did the commission then fine against your claimant if Minitch supported your claimant? Well, I think that one thing from reading the arbitrator's decision, the commission decision, they never quoted any of those statements or even referred to any of those statements on cross-examination. So I'm not sure exactly why they did not do that. And I've argued all along that they should have, and I think that's one of the most important key points in this case is that if you read cross-examination, Mr. Minitch is actually very favorable to my client on cross-examination. The only negative statement that he said was at the end of direct examination that, oh, well, yeah, he was uncooperative. And then when I asked him on cross to explain, I went through that, and that's how he stated that. So the commission erred in its credibility findings. Absolutely. I think so. And we can overturn that on credibility, right? Yes. I think there's not enough facts to find my client not credible. And actually, if we just go through the totality of the record, I think all the issues that they had with my client are, one, I think using Mr. Minitch as a negative and saying he's uncooperative is not how the record reflects, and I think that's an error by Mr. Minitch saying that he was cooperative in both. So all these missed appointments, when we go through the record, he did miss one, and so did Mr. Minitch. He said he was cooperative and could have found a job. Number two is as important as Mr. Minitch said, he didn't even get an opportunity to go look for a job. I mean, they just shut it down and just stopped paying at all. So they didn't even start the job search part of his vote. And as soon as he became financially viable, he did start that job search on his own to the best of his ability. So I think it should be continued. Thank you. Thank you, counsel. Counselor, you may respond. Thank you. Brad Elward on behalf of G&D Integrated. I think credibility is an interesting aspect of this case. We have to be enlighten us as to why the commission found against the claimant when the voc rehab experts supported his case. I don't think he did. I think there's two aspects of the credibility thing that we need to look at. First of all is the aspect relating to what the voc counselor said. And when we look at the cross-examination, which is at page C803 and 804, the question starts out and says, you're not saying he was uncooperative. You're saying that there was a medical issue that arose. Correct. And the doctor says, and I think this is ambiguous here, the doctor says, quote, that's what he reported to me. Yes, we never finished, never ironed out any other obstacles, continuing issues on disability, dressing, appropriately, resume and job applications. There's 101 things that we never really got into in terms of actual job placement. When we couple that ambiguity with the questions that were on direct of Mr. Minich, page C789 of the record, he's asked, did the petitioner miss He did not follow recommendations with regard to personal appearance. He did not show up to purchase clothing, which is the Coles incident you're referring to. And the doctor says, these would be reasons, barriers, significant barriers to obtaining employment. Yes. Now, can the commission look at that evidence and say, is that evidence of failure to cooperate or evidence of a lack of a significant effort to pursue vigorously a vocational rehab program? Yes, it can. And that's, in fact, what it did. Except we have even more here. We talk about credibility. Counsel was asked a question by the court, specifically how many appointments were missed. And he said, well, there was one for sure, but he missed one because he misunderstood where he was supposed to be. I think that tells us one thing about this case. This petitioner had an excuse for everything. He had an excuse for why I missed my appointments, why I couldn't go to Coles, why I couldn't shave my beard, why I couldn't apply online, why I had a six-month delay. Every time he was asked an important question to explain something, he was evasive or he had an excuse. The arbitrator sitting there has the duty of drawing the credibility assessment based on what he sees from the witness. He did so here. He found him not credible. And the commission, as we know, is a trier of fact, reviewed that and said, I don't see anything here suggesting otherwise, and we don't find the individual credible. Well, I think there was both. I think there was you should shave it or you should trim it because he said he was, I don't say unsightly. There was another word he used that wasn't quite that harsh. Unkept. Unkept was the word that he used. So when we look at the credibility in the context of those two things, I think it's clear that the commission here found this individual not credible. They looked at the fact that he missed appointments, that he was refusing to modify his appearance or make efforts to improve himself, that he had that six-month gap in time where he didn't do anything and couldn't really explain it. I know this gentleman did a self-guided or says he did a self-guided job search, and I know the law in the state says that that's acceptable. But here, the commission found it was not. It's not me arguing that you should disregard the self-regarded job search that the commission said was valid. Here, the commission said we're not buying this. The thing I think we need to keep in mind when we look at the supposed self-guided job search is we have no idea how this gentleman presented himself, and we clearly know from both his encounters with his doctor as far as we need to have a surgical procedure done, but we can't because we've got some weight issues, you've got some skin problems we've got to clear up. We want to try to place you with your employment. We've got issues in how he presents himself. He's unkept. Well, is it a logical conclusion to say maybe this guy appeared for these other jobs in this six-month time that he admitted this list and wasn't presenting himself in the best light? Yeah, sure. That's possible. So could the arbitrator have looked at this evidence and said this is not compelling? Yes, he could, and that's what we've got. In any event, the commission basically found that there was sufficient evidence in the record to support the denial, right? That's right. There's sufficient evidence in here. We've outlined it in our brief, and I think the conversations on credibility here that we've had really demonstrate this is a credibility question that's been resolved by the commission, and there's no grounds for reversing that. Thank you. Thank you, Counsel. Counsel, you may reply. Briefly, the counselor did state on the beard shade. I know we keep harping on this beard. Also, my client wasn't going to, he barely had a high school education. He was a blue-collar worker. He wasn't going to be applying for the CEO of Caterpillar. He was going to blue-collar jobs, and that's how he dressed, and that he stated in trial that he would and did dress appropriately and would dress appropriately for these interviews. And again, I think if we would just, if you just pay attention or read the cross-examination and how the vote counselor responded to my questions and answered questions about that situation, I think that was the main issue that the arbitrator relied upon. I don't think that all the facts were relied upon in this case, and that should be overturned. Thank you. Thank you, Counsel Balls. This matter will be taken under advisement, written disposition shall issue.